**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: 212-465-1180
Fax: 212-465-1181
*Attorneys for Plaintiffs, FLSA Collective*
*Plaintiffs, and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ROSA OLIBARES and ADAM RUSSELL,<br>*on behalf of themselves, FLSA Collective Plaintiffs,*<br>*and the class,*<br><br>                        Plaintiffs,<br><br>    v.<br><br>MK CUISINE GLOBAL LLC,<br>XYST, LLC,<br>PLANT BASED HOLDINGS, LLC,<br>BELGA CORP,<br>    d/b/a XYST,<br>PLANT-BASED PIZZA NEW YORK LLC,<br>    d/b/a DOUBLE ZERO,<br>    d/b/a 00+CO<br>A&D WINE CORP,<br>    d/b/a PLANT FOOD + WINE,<br>    d/b/a BAR VERDE,<br>CJFM LLC,<br>    d/b/a SESTINA,<br>HUNGRY ANGELINA DUMBO LLC,<br>    d/b/a HUNGRY ANGELINA,<br>MKCPBAY LLC,<br>    d/b/a SUTRA,<br>PLANT-BASED RESTAURANT EAST 4TH LLC,<br>    d/b/a SENTIO,<br>MATTHEW KENNEY,<br>YVES JADOT,<br>DAVID JADOT,<br>CHRISTOHE JADOT,<br>RAYMOND AZZI,<br>and KHALIL SALIBA,<br>                        Defendants. | Case No.:<br><br>**CLASS AND COLLECTIVE**<br>**ACTION COMPLAINT**<br><br>Jury Trial Demanded |

Plaintiffs, ROSA OLIBARES and ADAM RUSSELL  (hereinafter, "Plaintiffs"), on behalf of themselves and others similarly situated, by and through their undersigned attorneys, hereby file this class and collective action Complaint against Defendants MK CUISINE GLOBAL LLC, XYST, LLC, PLANT BASED HOLDINGS, LLC, BELGA CORP, d/b/a XYST, PLANT-BASED PIZZA NEW YORK LLC, d/b/a DOUBLE ZERO, d/b/a 00+CO, A&D WINE CORP, d/b/a PLANT FOOD + WINE, d/b/a BAR VERDE, CJFM LLC, d/b/a SESTINA, HUNGRY ANGELINA DUMBO LLC, d/b/a HUNGRY ANGELINA, MKCPBAY LLC, d/b/a SUTRA, PLANT-BASED RESTAURANT EAST 4TH LLC, d/b/a SENTIO, (collectively, "Corporate Defendants") MATTHEW KENNEY, YVES JADOT, DAVID JADOT, CHRISTOHE JADOT, RAYMOND AZZI, and KHALIL SALIBA, ("Individual Defendants") (each individually, "Defendant" or, collectively, "Defendants") and state as follows

## INTRODUCTION

1.      Plaintiffs allege, pursuant to the Fair Labor Standards Act as amended, 29 U.S.C. §§201 *et. seq.* ("FLSA"), that he, FLSA Collective Plaintiffs and similarly situated individuals are entitled to recover from Defendants: (1) unpaid wages due to invalid tip credit; (2) unlawfully retained gratuities; (3) compensation for improperly deducted meal credits; (4) liquidated damages, and (5) attorney's fees and costs.

2.      Plaintiffs further allege that, pursuant to the New York Labor Law ("NYLL"), he and others similarly situated are entitled to recover from Defendants: (1) unpaid minimum wage due to invalid tip credit; (2) unlawfully retained gratuities; (3) compensation for improperly deducted meal credits; (4) statutory penalties; (5) liquidated damages; and (6) attorney's fees and costs.

3.     Plaintiff OLIBARES further alleges that, pursuant to the New York State Human Rights Law, New York Executive Law § 296 ("NYHRL") and New York City Human Rights Law, Administrative Code of the City of New York § 8-107 ("NYCHRL"), she is entitled to recover from Defendants for creating and fostering a hostile work environment through persistent sexual harassment against Plaintiff OLIBARES, and she is entitled to recover: (1) economic damages; (2) compensatory damages; (3) punitive damages; and (4) attorney's fees and costs.

4.     Plaintiff OLIBARES further alleges that, pursuant to New York State Human Rights Law, New York Executive Law § 296 ("NYHRL") and New York City Human Rights Law, Administrative Code of the City of New York § 8-107 ("NYCHRL"), she and similarly situated individuals are entitled to recover from Defendants for discrimination on the basis of race and national original: (1) back pay; (2) front pay; (3) compensatory damages; (4) punitive damages; and (5) attorney's fees and costs.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1337 and 1343 and has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367.

6.     Venue is proper in the Southern District pursuant to 28 U.S.C. §1391.

## PARTIES

7.     At all relevant times herein, Plaintiff OLIBARES, was and is a resident of Bronx County, New York.

8.     At all relevant times herein, Plaintiff RUSSELL, was a resident of New York County, New York.

9.     Defendants collectively own and operate eight (8) vegan restaurants at the following locations:

a)  "Xyst" - 44 West, 17th Street, New York, NY 10011;

b)  "Doble Zero" (previously "00+CO") - 65 2nd Ave, New York, NY 10003;

c)  "Plant Food + Wine" - 67 2nd Ave, New York, NY 10003;

d)  "Bar Verde" - 65 2nd Ave, New York, NY 10003;

e)  "Sestina" - 84 East 4th Street, New York, NY 10003;

f)   "Hungry Angelina" - 117 Adams St, Brooklyn, NY 11201;

g)  "Sutra" - 164 5th Ave 4th FL, New York, NY 10010; and

h)  "Sentio" - 87 East 4th Street, New York, NY 10003 (and collectively, the Restaurants).

10.     All the Restaurants are operated as a single integrated enterprise under the common control of the Corporate and Individual Defendants. Specifically, the Restaurants are engaged in related activities, share common ownership, and have a common business purpose.

a)  All Restaurants are under the control of Corporate and Individual Defendants. Specifically, Individual Defendant MATTHEW KENNEY operates the totality of the Restaurants as  asserted on Defendant KENNEY's website, social media, and interview pages. *See* **Exhibit A**.

b)  All the Restaurants are integral part of Individual Defendant MATTHEW KENNEY's gastronomic and life-stye vegan project. *See* **Exhibit B**.

c)  The     Restaurants     advertise     jointly     on     Defendants'     website https://www.matthewkenneycuisine.com/. The Restaurants are listed alongside one another under the "Restaurants" section of the website. *See* **Exhibit C**.

d) The Restaurants establishments serve similar goods, have the same suppliers, and all share similar décor, ambience, and appearance. *See* **Exhibit D**.

e) Defendants open, close, and/or change the Restaurant name at the same corner located between Second Avenue and 4th Street, New York, NY 10003. During a time-lapse, Defendants operated the Restaurants Xyst, Double Zero, Plant Food + Wine, Bar Verde, and Sestina at the same location, or in the case, one next to each other. *See* **Exhibit E**.

f) All Restaurants have a centralized Human Resources that deals with hiring, firing, and administering all the Restaurants' work force. Moreover, all the Restaurants have a centralized platform for hiring. *See* **Exhibit F**.

g) Additionally, Corporate Defendant XYST LLC, manages and administers all Restaurants' payroll, payments, and wage policies. *See* **Exhibit G**.

11.     Defendants operate the Restaurants through the following Corporate Defendants:

a) Corporate Defendant, XYST LLC, is a domestic business corporation organized under the laws of California with a principal place of business and an address of service of process located at 1009 Abbot Kinney Blvd., Venice, CA 90291.

b) Corporate Defendant, PLANT BASED HOLDINGS, LLC, is a domestic business corporation organized under the laws of Florida, with a principal place of business located at 1075 SE 17th Street, Fort Lauderdale, FL 33316 and an address for service of process located at One West Las Olas Boulevard, Suite 500, Fort Lauderdale, FL 33301.

c) Corporate Defendant, MK CUISINE GLOBAL LLC, is a domestic business corporation organized under the laws of Delaware, with a principal place of

business located at 1267 Willis Street, Suite 200, Redding, CA 96001 and an address for service of process located at 8 The Green, Suite B Dover, DE 19901.

d) Corporate Defendant, BELGA CORP d/b/a XYST, is a domestic business corporation organized under the laws of New York, with a principal place of business located at 44 West, 17th Street, New York, NY 10011 and an address for service of process located at 310 East 65th Street, 12B, New York, NY 10065.

e) Corporate Defendant, PLANT-BASED PIZZA NEW YORK, LLC, d/b/a DOUBLE ZERO, is a domestic business corporation organized under the laws of New York, with a principal place of business located at 65 2nd Ave, New York, NY 10003 and an address for service of process located at 903B Sheridan Avenue, Bronx, NY 10451.

f) Corporate Defendant, A&D WINE CORP, d/b/a BAR VERDE, d/b/a PLANT FOOD + WINE is a domestic business corporation organized under the laws of New York, with a principal place of business and an address for service of process located at 65 Second Avenue, New York, NY 10003.

g) Corporate Defendant, CJFM LLC, d/b/a SESTINA, is a domestic business corporation organized under the laws of New York, with a principal place of business located at 84 East 4th Street, New York, NY 10003 and an address for service of process located at 90 State Street, Suite 700, Office 40, Albany, NY 12207.

h) Corporate Defendant, HUNGRY ANGELINA DUMBO, LLC, d/b/a HUNGRY ANGELINA, is a domestic business corporation organized under the laws of New York, with a principal place of business located at 117 Adams Street, Brooklyn,

NY 11201and an address for service of process located at 90 State Street, Suite 700, Office 40, Albany, NY 12207.

i) Corporate Defendant, MKCPBAY LLC, d/b/a SUTRA, is a domestic business corporation organized under the laws of New York, with a principal place of business located at 164 5th Avenue, 4th Floor, New York, NY 10010 and an address for service of process located at 90 State Street, Suite 700, Office 40, Albany, NY 10010.

j) Corporate Defendant, PLANT-BASED RESTAURANT EAST 4TH LLC, d/b/a SENTIO is a domestic business corporation organized under the laws of New York, with a principal place of business located at 87 East 4th Street, New York, NY 10003 and an address for service of process located at 90 State Street, Suite 700, Office 40, Albany, Y 12207.

12.     Individual Defendant MATTHEW KENNEY is the principal and executive officer of all Corporate Defendant entities. MATTHEW KENNEY exercises operational control as it relates to all employees including Plaintiffs, FLSA Collective Plaintiffs, and the Class. MATTHEW KENNEY frequently visits the Restaurants. MATTHEW KENNEY exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiffs, FLSA Collective Plaintiffs, and the Class. At all times, employees of the Restaurants could complain to MATTHEW KENNEY directly regarding any of the terms of their employment, and MATTHEW KENNEY would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or

hiring such employees. MATTHEW KENNEY exercised functional control over the business and financial operations of Corporate Defendants. MATTHEW KENNEY had the power and authority to supervise and control supervisors of Plaintiffs, FLSA Collective Plaintiffs, and Class members, and could reprimand employees.

13.    Individual Defendant YVES JADOT is a principal and general manager of Corporate Defendants. YVES JADOT exercises operational control as it relates to all employees including Plaintiffs, FLSA Collective Plaintiffs, and the Class. YVES JADOT frequently visits the Restaurants. YVES JADOT exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiffs, FLSA Collective Plaintiffs, and the Class. At all times, employees of the Restaurants could complain to YVES JADOT directly regarding any of the terms of their employment, and YVES JADOT would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees. YVES JADOT exercised functional control over the business and financial operations of Corporate Defendants. YVES JADOT had the power and authority to supervise and control supervisors of Plaintiffs, FLSA Collective Plaintiffs, and Class members, and could reprimand employees.

14.    Individual Defendant DAVID JADOT is a principal and manager of Corporate Defendants. DAVID JADOT exercises operational control as it relates to all employees including Plaintiffs, FLSA Collective Plaintiffs, and the Class. DAVID JADOT frequently visits the Restaurants. DAVID JADOT exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work

schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiffs, FLSA Collective Plaintiffs, and the Class. At all times, employees of the Restaurants could complain to DAVID JADOT directly regarding any of the terms of their employment, and DAVID JADOT would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees. DAVID JADOT exercised functional control over the business and financial operations of Corporate Defendants. DAVID JADOT had the power and authority to supervise and control supervisors of Plaintiffs, FLSA Collective Plaintiffs, and Class members, and could reprimand employees.

15.    Individual Defendant CHRISTOHE JADOT is a principal and manager of Corporate Defendants. CHRISTOHE JADOT exercises operational control as it relates to all employees including Plaintiffs, FLSA Collective Plaintiffs, and the Class. CHRISTOHE JADOT frequently visits the Restaurants. CHRISTOHE JADOT exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiffs, FLSA Collective Plaintiffs, and the Class. At all times, employees of the Restaurants could complain to CHRISTOHE JADOT directly regarding any of the terms of their employment, and CHRISTOHE JADOT would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees. CHRISTOHE JADOT exercised functional control over the business and financial operations of Corporate Defendants. CHRISTOHE JADOT had the power and authority to

supervise and control supervisors of Plaintiffs, FLSA Collective Plaintiffs, and Class members, and could reprimand employees.

16.     Individual Defendant RAYMOND AZZI is a principal and manager of Corporate Defendants. RAYMOND AZZI exercises operational control as it relates to all employees including Plaintiffs, FLSA Collective Plaintiffs, and the Class. RAYMOND AZZI frequently visits the Restaurants. RAYMOND AZZI exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiffs, FLSA Collective Plaintiffs, and the Class. At all times, employees of the Restaurants could complain to RAYMOND AZZI directly regarding any of the terms of their employment, and RAYMOND AZZI would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees. RAYMOND AZZI exercised functional control over the business and financial operations of Corporate Defendants. RAYMOND AZZI had the power and authority to supervise and control supervisors of Plaintiffs, FLSA Collective Plaintiffs, and Class members, and could reprimand employees.

17.     Individual Defendant KHALIL SALIBA is a principal and manager of Corporate Defendants. KHALIL SALIBA exercises operational control as it relates to all employees including Plaintiffs, FLSA Collective Plaintiffs, and the Class. KHALIL SALIBA frequently visits the Restaurants. KHALIL SALIBA exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiffs, FLSA Collective Plaintiffs, and the Class. At all times,

employees of the Restaurants could complain to KHALIL SALIBA directly regarding any of the terms of their employment, and KHALIL SALIBA would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees. KHALIL SALIBA exercised functional control over the business and financial operations of Corporate Defendants. KHALIL SALIBA had the power and authority to supervise and control supervisors of Plaintiffs, FLSA Collective Plaintiffs, and Class members, and could reprimand employees.

18.    At all relevant times, Corporate Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA, NYLL, and regulations thereunder.

19.    At all relevant times, the work performed by Plaintiffs, FLSA Collective Plaintiffs, and Class members was directly essential to the business operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

20.    Plaintiffs bring claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt front-of-house and back-of-house employees (including delivery persons, servers, runners, bussers, bartenders, baristas, cashiers, porters, cooks, line-cooks, food preparers, garde-manger/salad preparers, and dishwashers) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (herein, "FLSA Collective Plaintiffs").

21.    At all relevant times, Plaintiffs and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in improperly deducted meal credits

from employees' wages. The claims of Plaintiffs stated herein are essentially the same as those of the other FLSA Collective Plaintiffs. A subclass of tipped employees has a claim for: (i) unpaid wages due to an invalid deducted tip credit; (ii) unlawfully retained gratuities; (iii) compensation for improperly deducted meal credits; (iv) liquidated damages; and (v) attorney's fees and costs. The claims of Plaintiffs stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

22.    The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to §16(b) of FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

23.    Plaintiffs bring claims for relief pursuant to Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt front-of-house and back-of-house employees (including delivery persons, servers, runners, bussers, bartenders, baristas, cashiers, porters, cooks, line-cooks, food preparers, garde-mangers/salad preparers, and dishwashers) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case, as defined herein (the "Class Period").

24.    All said persons, including Plaintiffs, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are able to be determined from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class member are also determined from Defendants' records. For

purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

25.     The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently based are within the sole control of Defendants. There is no doubt that there are more than forty (40) members of the Class. The Class further includes a subclass of tipped employees ("Tipped Subclass") who also number more than forty (40). Plaintiff RUSSELL and Plaintiff OLIBARES are members of the Class, and Plaintiff RUSSELL is a member of the Tipped Subclass.

26.     Plaintiffs' claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief, that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants of: (i) failing to pay wages due to invalid tip credit deductions: (ii) unlawfully retained gratuities;, (iii) unlawfully deducted meal credit; (iv) failing to provide proper wage statements per requirements of NYLL; (v) failing to provide proper tip notices to class members; and (vi) failing to properly provide wage notices to Class members, at the date of hiring and annually, per requirements of NYLL.

27.     Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

28.     With regard to Plaintiff RUSSELL and the Tipped Subclass, Defendants also failed to pay the proper minimum wage because Defendants were not entitled to claim any tip credit as they failed to meet the statutory requirements under NYLL. Plaintiff RUSSELL and the Tipped Subclass similarly suffered from Defendants' failure to pay the proper minimum wage due to Defendants' invalid tip credit allowance, because Defendants: (i) failed to properly provide tip credit notice at hiring and annually thereafter; (ii) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours exceeding twenty percent (20%) of the total hours worked during a given shift each workweek; (iii) implemented an invalid tip pooling scheme; (iv) illegally retained tips; (v) failed to provide proper wage statements clearly indicating tip credit allowance for each payment period; and (vi) failed to accurately keep track of daily tips earned and maintain records thereof.

29.     Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented Plaintiffs in wage and hour cases.

30.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because of losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of

individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

31. Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

32. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

      a. Whether Defendants employed Plaintiffs and the Class within the meaning of New York law and applicable state laws;

b.  What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiffs and Class members properly;

c.  At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiffs and Class members for their work;

d.  Whether Defendants properly notified Plaintiffs and Class members of their hourly rates ;

e.  Whether Defendants properly compensated Plaintiffs and Class members for all hours worked;

f.  Whether Defendants operated their business with a policy of failing to pay Plaintiffs, FLSA Collective Plaintiffs, and Class members for all hours worked;

g.  Whether Defendants properly provided notice to all tipped employees that Defendants were taking a tip credit;

h.  Whether Defendants accurately tracked the amounts of tips earned each day and maintained records thereof;

i.  Whether Defendants caused tipped employees to engage in non-tipped duties exceeding 20% or two hours of their work shift;

j.  Whether Defendants provided proper wage statements informing: i) tipped employees of the amount of tip credit allowance  for each payment period; and (ii) all non-exempt employees of information required to be provided on wage statements as required under NYLL and applicable state laws; and

k. Whether Defendants provided proper wage and hour notice to employees, including, among others, the rate of compensation, trade name of employer, pursuant to the requirements of NYLL and applicable state laws.

## STATEMENT OF FACTS

### Plaintiff ROSA OLIBARES

33. In or around February 2019, Plaintiff ROSA OLIBARES was hired by Defendants to work as a garde-manger and salad preparer for Defendants' "Double Zero" (previously 00+CO) restaurant located at 65 Second Avenue, New York, NY 10003. Plaintiff was employed by Defendants until in or around February 15, 2020.

34. Regardless that Plaintiff OLIBARES was hired to work for Defendants' Double Zero restaurant, Plaintiff was often transferred to work at Defendants' other restaraunts, including XYST, Plant Food+Wine, and Bar Verde Restaurants.

35. During her employment, Plaintiff OLIBARES was scheduled to work from 10:00 a.m. to 6:30 p.m. for five (5) days per week, for a total of forty-two and half (42.50) hours per week. Plaintiff and Class members similarly worked continuously without taking a minimum thirty (30) minute break.

36. Plaintiff OLIBARES was compensated from in or around February 2019 to in or around October 2019 at a rate of $15 per hour. From in or around November 2019 to in or around February 15, 2020, Plaintiff OLIBARES was compensated at a rate of $17 per hour.

37. Plaintiff OLIBARES is a female Hispanic woman. During her employment with Defendants, she was constantly sexually harassed by the chef and manager JOSE QUESADA. The incidents include:

a) On February 13, 2020, Plaintiff OLIBARES was changing her uniform in the locker room area. When she was without a t-shirt, Chef QUESADA entered the room and gazed at Plaintiff OLIBARES. Feeling uncomfortable, Plaintiff requested QUESADA to leave the room, to which he answered, staring at Plaintiff's body, "your breasts aren't that big anyway."

b) On February 14, 2020, Chef QUESADA approached Plaintiff  while licking his lips in a sexual manner started talking about Plaintiff OLIBARES' breast size.

c) When Plaintiff OLIBARES had to bend or bow, Chef QUESADA would stand behind Plaintiff, staring at her and making loud comments regarding her behind.

d) On several occasions, while working in the kitchen, QUESADA touched and pinched Plaintiff's OLIBARES' buttocks. After she protested, Chef QUESADA said that it was unintentional, and she was exaggerating the situation. Plaintiff OLIBARES was in constant fear of retaliation as Chef and Manager QUESADA had the power to fire and reprimand employees.

e) On February 15, 2020, when Plaintiff OLIBARES bent to reach produce from a refrigerator, Chef QUESADA made loud sexual remarks about Plaintiff's behind. Not sufficient with that, he gathered other male employees and encouraged them to mimic his inappropriate behavior. These incidents led to Plaintiff OLIBARES' resignation.

These harassment practices were regular and continuous, affecting Plaintiff OLIBARES not only emotionally, but financially. The constant sexual harassment and humiliation that Plaintiff endured while working for Defendants generated a constructive termination from employment. .

38.    In addition, during her employment with Defendants, Plaintiff OLIBARES and Class members suffered from Defendants' discriminatory practices, as detailed below:

a)  Plaintiff OLIBARES and the totality of the back-of-the house employees are from Hispanic ethnicity;

b)  Defendants had a policy of hiring only white or Caucasian employees for front-of-the house positions. All back-of-the-house employees are Hispanic and mostly Mexican;

c)  Defendants do not allow Hispanic employees to appear or show at the dining area or close to the facade;

d)  Defendants never hire Hispanic employees for front-of-the-house positions.

e)  EMILY (Last Name Unknown), who is a Caucasian chef and manager with the power to fire and hire employees, change their schedules and decide their wages, forbid Hispanic employees to bring their lunch, adducing that Hispanic food contaminates the kitchen. Meanwhile, white and Caucasian employees were allowed to bring their food, which is mostly take-out from a famous Mexican fast-food chain.

f)  Additionally, chef EMILY forbid only Hispanic employees to eat inside or outside the Restaurant because they could bring remainders of Hispanic food and contaminate the kitchen.

g)  Furthermore, it is of Plaintiffs' knowledge that Defendants' restaurant "Bar Verde" sells food appropriated from Mexican cuisine, and even there, Hispanic employees are forbidden to eat because Defendants consider that real Hispanic food contaminates the area.

h)  Only Hispanic employees are forbidden to eat inside or outside the Restaurant. White and Caucasian employees are allowed to eat their own lunch at the Restaurants' kitchen or at the dining area, regardless of whether the food is ethnic or non-vegan.

Defendants have a cruel and biased practice of not allowing Hispanic employees to consume any kind of food for long periods. Because of this biased practice directed only to a specific ethnicity, Plaintiff OLIBARES and Class members suffered physical discomfort and emotional and ethnic humiliation, while working for Defendants.

**Plaintiff ADAM RUSSELL**

39.     In or around August 2019, Plaintiff ADAM RUSSELL was hired by Defendants to work as a Server for Defendants' Double Zero (previously 00+CO) restaurant located at 65 Second Avenue, New York, NY 10003.  Plaintiff was employed by Defendants until in or around March  2020.

40.     During his employment, Plaintiff RUSSELL was scheduled to work from 3:00 p.m. to 9:00 p.m. for five (5) days per week, for a total of thirty (30) hours per week. Plaintiff and Class members similarly worked continuously without taking a minimum thirty (30) minute break.

41.     Throughout Plaintiff RUSSELL's employment with Defendants, he was compensated at a tipped credit minimum wage rate. However, Defendants did not properly compensate Plaintiff RUSSELL for tip credit. As a result, Plaintiff RUSSELL was paid below minimum wage, while Defendants claimed invalid tip credit.

42.     At all relevant times, Defendants compensated Plaintiff RUSSELL at the tipped credit minimum wage rate. Nevertheless, Defendants were not entitled to claim any tip credit allowance under FLSA or NYLL because Defendants: (i) failed to properly provide tip credit

notice at hiring and annually thereafter: (ii) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties in excess of two hours or 20% of the total hours worked each shift; (iii) failed to provide proper wage statements clearly indicating tip credit allowance for each payment period; and (iv) failed to accurately keep track of daily tips earned and maintain records thereof.

43.     Specifically, Plaintiff RUSSELL was required to engage more than two hours or 20% of his working time performing non-tipped related activities, such as going to the bank to make deposits on Defendants' accounts, bookkeeping, taking care of the plants, accept and unload deliveries, organize and setup wine and spirits, dishwash, clean bathrooms, and stock toiletries. Even though Defendants required Plaintiff RUSSELL and Tipped Subclass employees to engage in non-tipped activities in excess of two hours or 20% of the total hours worked each shift, Defendants improperly claimed tip credit for all hours worked by tipped employees.

44.     Moreover, during his employment by Defendants, Plaintiff RUSSELL and the tipped Subclass members received every week a similar amount in tips regardless of the quantity of clientele and service of the week.  This was a regular claim among Plaintiff RUSSELL and the tipped Subclass members, as it was clear that Defendants were not distributing the tips properly. It is of Plaintiff RUSSELL and Class members belief that managers and chefs participate in  tip-pooling. Defendants failed to inform Plaintiff RUSSELL and tipped Subclass members that all tips received by them were to be retained by them, except pursuant to a valid tip pooling arrangement in violation of FLSA.

45.     Although Plaintiffs and Class members regularly had no break time and were not able to take a free and clear break, Defendants automatically deducted from their wages a meal credit. Specifically, Plaintiff RUSSELL worked for six hours continuously without a break time.

Plaintiff OLIBARES could not eat because she may "contaminate" the kitchen. Nevertheless, Defendants deducted automatically from Plaintiffs' paychecks the equivalent of $18 every week. Similarly, FLSA collective Plaintiffs and Class members also suffered weekly meal credit deductions, regardless of whether FLSA collective Plaintiffs and Class members took a break.

46.     At no time during the relevant periods did Defendants provide Plaintiffs or Class members with proper wage statements as required by NYLL.

47.     At no time during the relevant periods did Defendants provide Plaintiff RUSSELL or Class members with proper tip notices as required by NYLL.

48.     At no time during the relevant periods did Defendants provide Plaintiffs or Class members with proper wages notices, at the beginning of employment and annually thereafter, as required by NYLL.

49.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices, at the beginning of employment and annually thereafter, pursuant to the requirements of NYLL.

50.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements as required by NYLL.

51.     Plaintiffs retained Lee Litigation Group, PLLC to represent Plaintiffs, FLSA Collective Plaintiffs, and Class members.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF FAIR LABOR STANDARDS ACT

52.     Plaintiffs reallege and reaver Paragraphs 1 through 51 of this Class and Collective Action Complaint as fully set forth herein.

53.    At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiffs and FLSA Collective Plaintiffs are covered individuals within the meaning of FLSA, 29 U.S.C. §§ 206(a) and 207(a).

54.    At all relevant times, Defendants employed Plaintiffs and FLSA Collective Plaintiffs within the meaning of FLSA.

55.    At all relevant times, Corporate Defendants had gross annual revenues in excess of $500,000.

56.    At all relevant times, Defendants had a policy and practice that failed to pay wages due to invalid tip credit to Plaintiff RUSSELL and FLSA Collective Plaintiffs. .

57.    At all relevant times, Defendants had a policy and practice of unlawfully retaining Plaintiff RUSSELL and FLSA Collective Plaintiffs' gratuities.

58.    At all relevant times, Defendants had a policy and practice of improperly deducting meal credits from Plaintiffs and FLSA Collective Plaintiffs' wages.

59.    Records, if any, concerning the number of hours worked by Plaintiffs and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiffs and FLSA Collective Plaintiffs should be in the possession and custody of Defendants. Plaintiffs intend to obtain these records by appropriate discovery proceedings to be taken promptly in this case, and if necessary, will seek leave of Court to amend this Complaint to set forth the precise amount due.

60.    Defendants knew of and/or showed a willful disregard for the provisions of FLSA as evidenced by their failure to compensate Plaintiffs and FLSA Collective Plaintiffs  proper wages, when Defendants knew or should have known such was due.

61.    Defendants failed to properly disclose or apprise Plaintiffs and FLSA Collective

Plaintiffs of their rights under FLSA.

62.     As a direct and proximate result of Defendants' willful disregard of FLSA, Plaintiffs and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to FLSA.

63.     Due to the intentional, willful, and unlawful acts of Defendants, Plaintiffs and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages due to invalid tip credit, tip retentions and deductions, and deducted meal credit, plus an equal amount as liquidated damages.

64.     Plaintiffs and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorney's fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II

## <u>VIOLATION OF NEW YORK LABOR LAW</u>

65.     Plaintiffs reallege Paragraphs 1 through 65 of this Class and Collective Action Complaint as if fully set forth herein.

66.     At all relevant times, Plaintiffs and Class members were employed by Defendants within the meaning of NYLL, §§ 2 and 651.

67.     At all relevant times, Defendants engaged in a policy and practice of unlawfully deducting meal credits from Plaintiffs and Class members' wages, in direct violation of NYLL.

68.     Defendants engaged in a policy and practice of refusing to pay Plaintiff RUSSELL and tipped Subclass members the New York City minimum wage due to invalid tip credit.

69.     Defendants willfully violated the rights of Plaintiff RUSSELL and tipped Subclass members by retaining gratuities, in direct violation of NYLL.

70.     Defendants failed to properly notify employees of their tips and tip pooling policies, in direct violation of NYLL.

71.     Defendants knowingly and willfully operated their business with a policy of not providing Plaintiffs and Class members proper wage notice, at date of hiring and annually thereafter, as required under NYLL.

72.     Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff RUSSELL and tipped Subclass members proper tip notices, at date of hiring and annually thereafter, as required under NYLL.

73.     Defendants knowingly and willfully operated their business with a policy of not providing wage statements, as required under NYLL.

74.     Due to Defendants' NYLL violations, Plaintiffs and Class members are entitled to recover from Defendants unlawfully retained meal credits.

75.     Due to Defendants' NYLL violations, Plaintiff RUSSELL and tipped Subclass members are entitled to recover from Defendants unpaid wages due to tip credit, tip compensation due to invalid tip pooling, unlawfully retained gratuities. damages for unreasonably delayed payments, reasonable attorney's fees, liquidated damages, statutory penalties, and costs and disbursements of the action, pursuant to NYLL.

**COUNT III**

**<ins>VIOLATION OF NEW YORK STATE HUMAN RIGHTS LAW ("NYSHRL")</ins>**

76.     Plaintiffs reallege and reaver Paragraphs 1 through 75 of this Class and Collective Action Complaint as if fully set forth herein.

77.     The New York State Human Rights Law ("NYSHRL") prohibits discrimination in the terms, conditions, and privileges of employment, and the retaliation thereof, on the basis of

race and national origin.

78.     Plaintiff OLIBARES was an employee and qualified person within the meaning of NYSHRL and Defendants are covered employers under NYSHRL.

79.     Defendants operated a business that discriminated against Plaintiff OLIBARES and Class members in violation of NYSHRL by discriminating against Plaintiff in violation of Section 296(1)(a) with respect to the terms, conditions, and privileges of her employment because of her race and national origin in ways including, but without limitation:

    a)      Limiting Plaintiff and Hispanic class members movement;

    b)      Not hiring or allowing current and former Hispanic class members to have front-of-the-house positions; and

    c)      Forbidding and limiting Plaintiff OLIBARES and Hispanic class members' alimentation.

80.     Defendants' conduct was intentional, malicious, and in reckless disregard of Plaintiffs' protected rights under Section 296 of NYSHRL.

81.     As a result of Defendants' unlawful discriminatory practices, Plaintiff OLIBARES sustained injury, including economic damages and past and future physical and emotional distress.

82.     Due to Defendants' violations under NYSHRL, based on discrimination on the basis of race and national origin, Plaintiff is entitled to recover from Defendants: (1) back pay; (2) front pay; (3) compensatory damages; (4) punitive damages; and (5) attorney's fees and costs.

83.     Additionally, Defendants violated NYSHRL by creating and maintaining a hostile work environment. This hostile work environment was created and fostered through pervasive

and regular sexual harassment in the form of comments and behavior directed towards Plaintiff OLIBARES.

84.     The hostile work environment was sufficiently severe and pervasive to unreasonably interfere with Plaintiff's employment and/or create an intimidating, hostile, and offensive work environment for Plaintiff, which led to her constructive termination.

85.     As a direct and proximate result of said hostile work environment, Plaintiff OLIBARES suffered and continues to suffer actual damages in various ways, including but without limitation, loss of past and future earnings, mental anguish, and pain and suffering. Plaintiff OLIBARES seek judgment in an amount to be determined at trial for these damages as well as an award of punitive damages, interest, attorney's fees, and costs, as provided for under NYSHRL.

<b>COUNT IV</b>

<b><u>VIOLATION OF NEW YORK CITY HUMAN RIGHTS LAW, ADMINISTRATIVE</u></b>

<b><u>CODE OF THE CITY OF NEW YORK § 8-107 ("NYCHRL")</u></b>

86.     Plaintiffs reallege and reaver Paragraphs 1 through 85 of this Class and Collective Action Complaint as if fully set forth herein.

87.     At all relevant times, Plaintiff OLIBARES was an employee within the meaning of NYCHRL and Defendants are covered employers under NYCHRL.

88.     Defendants operated a business that discriminated against Plaintiff OLIBARES and Class members in violation of NYCHRL by discriminating against Plaintiff with respect to the terms, conditions, and privileges of her employment because of her race and national origin in various ways, including but without limitation:

      a)     Limiting Plaintiff and Hispanic class members movement;

b)      Not hiring or allowing current and former Hispanic class members to hold front-of-the-house positions; and

c)      Forbidding and limiting Plaintiff and Hispanic class members alimentation.

89.    Defendants' conduct was intentional, malicious, and in reckless disregard of Plaintiff's protected rights under NYCHRL.

90.    As a result of Defendants' unlawful discriminatory practices, Plaintiff OLIBARES sustained injury, including economic damages and past and future physical and emotional distress.

91.    Due to Defendants' violations under NYCHRL, based on discrimination on the basis of race and national origin, Plaintiff OLIBARES is entitled to recover from Defendants: (1) back pay; (2) front pay; (3) compensatory damages; (4) punitive damages; and (5) attorney's fees and costs.

92.    Additionally, Defendants violated NYCHRL by creating and maintaining a hostile work environment. This hostile work environment was created and fostered through pervasive and regular sexual harassment in the form of comments and behavior directed towards Plaintiff OLIBARES.

93.    The hostile work environment was sufficiently severe and pervasive to unreasonably interfere with Plaintiff's employment and/or create an intimidating, hostile, and offensive work environment for Plaintiff, which lead to constructive termination.

94.    As a direct and proximate result of said hostile work environment, Plaintiff OLIBARES suffered and continues to suffer actual damages in various ways, including but without limitation, loss of past and future earnings, mental anguish, and pain and suffering.

95.    Plaintiff OLIBARES seeks judgment in an amount to be determined at trial for these damages as well as an award of punitive damages, interest, attorney's fees, and costs, as provided for under NYCHRL.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs on behalf of themselves, FLSA Collective Plaintiffs, and Class members, respectfully request that this Court grant the following relief:

a.    A declaratory judgment that the practices complained of herein are unlawful under FLSA and NYLL;

b.    An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.    An award of unpaid wages due to invalid tip credit deductions under NYLL;

d.    An award of invalidly retained gratuities under NYLL;

e.    An award of invalid meal deductions under FLSA and NYLL;

f.    An award of backpay, compensatory damages, and punitive damages due under NYSHRL;

g.    An award of backpay, compensatory damages, and punitive damages due under NYCHRL;

h.    An award of statutory penalties, prejudgment, and post judgment interest, costs, and expenses of this action together with reasonable attorney's fees and expert fees and statutory penalties;

i.    Designation of Plaintiffs as Representatives of FLSA Collective Plaintiffs;

j.   Designation of Plaintiffs as Representatives of the tipped Subclass members;

k.   Designation of this action as a class action pursuant to F.R.C.P. 23;

l.   Designation of Plaintiffs as Representatives of the Class; and

m.   Such other and further relief as this Court deems just and proper.

## **<u>JURY DEMAND</u>**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all issues so triable as of right by jury.

Date: December 14, 2021                      Respectfully submitted,
     New York, New York           By:   /s/ *CK Lee*
                                        C.K. Lee, Esq.
                                        **LEE LITIGATION GROUP, PLLC**
                                        C.K. Lee (CL 4086)
                                        Anne Seelig (AS 3976)
                                        148 W. 24th Street, 8th Floor
                                        New York, NY 10011
                                        Tel.: 212-465-1180
                                        Fax: 212-465-1181
                                        *Attorneys for Plaintiffs,*
                                        *FLSA Collective Plaintiffs*
                                        *and the Class*